```
IN THE UNITED STATES DISTRICT COURT FOR THE
         SOUTHERN DISTRICT OF ALABAMA
               SOUTHERN DIVISION
```

CECIL WALLACE                      :

    Plaintiff,                 :

vs.                                : CIVIL ACTION 10-0435-KD-M

CORRECTIONAL OFFICER               :
ROBERT BYRD,
                                   :
    Defendant.


<u>REPORT AND RECOMMENDATION</u>

    Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendant's motion for summary judgment (Docs. 17, 18) and Plaintiff's Opposition thereto (Doc. 21). For the reasons stated below, it is recommended that Defendant's motion for summary judgment be granted and that Plaintiff's action be dismissed with prejudice.

I.  <u>SUMMARY OF FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY</u>

    From its review of the record, the Court summarizes the procedural history and the parties' allegations that are material to the issues addressed in this Report and

1

Recommendation. On February 17, 2010, while incarcerated in the Holman Correctional Facility ("Holman"), Plaintiff was served breakfast (Doc. 5, p. 4). Officer Timothy Vignolo ("Vignolo") passed out breakfast trays and Officer Charles Andrews ("Andrews") followed Vignolo and passed out the morning drink (Doc. 18-4, p. 1). Officer Andrews saw Plaintiff throw a biscuit off his tray (Doc. 18-4, p. 1)[1]. Plaintiff then complained that he was served an inadequate breakfast tray[2] (Doc. 5, p. 4). After Officers Vignolo and Andrews finished passing out trays to feed the three floors of the segregation unit, the inmate trays were picked up (Doc. 18-4, p. 1). When it was time for the trays to be picked up, Plaintiff had his tray in the tray hole with his arm across the top of it so the tray door could not be closed (Doc. 18-4, pp. 1-2; Doc. 18-1, pp. 1-2; see Doc. 5, p. 4). Plaintiff wanted to speak to the Lieutenant (Doc. 5, p. 4), but was told by Defendant Officer Robert Byrd ("Byrd") that it was time to close the tray hole doors and that

---

[1] Plaintiff's Complaint states that a biscuit fell off his tray (Doc. 5, p. 4), but in his response (see Doc. 21) Plaintiff does not refute Officer Andrew's assertion that Plaintiff threw the biscuit off the tray himself.

[2] It is not clear from Plaintiff's pleadings if he alleges the incident occurred during the tray distribution or pick-up time.

Defendant would call the Lieutenant after Plaintiff's tray hole door was shut[3] (Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2).

According to Officer Vignolo, the following exchange then occurred:

> Inmate Wallace said, "fuck you, I want to talk to the Lieutenant." Officer Byrd said again, I'm not calling the Lieutenant until we close your tray hold (sic) door". Inmate Wallace said, "I bet if I throw some shit on you I'll get to see the Lieutenant." Officer Byrd and I pulled the tray out of the tray hole door. Inmate Wallace then placed his arm across the tray hole door and held on to it so we could not close it. Then Officer Byrd pulled his baton and tapped the tray hole door and told inmate Wallace to move his arm so we can close the door. Inmate Wallace said, "fuck you bitch, I want to talk to the Lieutenant". Officer Byrd then struck inmate Wallace across the right arm once.

(Doc. 18-4, p. 2). Defendant Byrd's affidavit indicates similarly that Plaintiff became "more belligerent" and "yell[ed] obscenities" at Byrd when Byrd asked Plaintiff to remove Plaintiff's arm from the tray hole (Doc. 18-1, pp. 1-2). In Officer Andrew's affidavit, he states that the following occurred:

---

[3] Plaintiff states in his Complaint that Defendant Byrd told Plaintiff he would speak to nobody and that Defendant Byrd took the tray and threw it on the floor (Doc. 5, p. 4). However, again, Defendant's evidence refutes Plaintiff's version of these facts, and Plaintiff does not argue that these particular facts are incorrect in his response. Thus, the Court accepts Defendant's version of these particular facts.

3

> Inmate Wallace refused to comply with Officer Byrd's
> orders. Office Byrd repeatedly instructed inmate
> Wallace to remove his (Wallace's) arm from the tray
> door. Inmate Wallace threatened to throw urine on
> Officer Byrd. Officer Byrd instructed inmate Wallace
> to remove his arm. Officer Byrd began to move inmate
> Wallace's arm back into his cell. Inmate Wallace
> tried to grab Officer Byrd. Officer Byrd struck
> inmate Wallace once on the arm with his (Byrd's)
> baton. Officer Byrd radioed for a supervisor.

(Doc. 19-1, pp. 1-2). In Officer Charles Daughtry's affidavit, he indicates that inmate Wallace refused to move his arm even though Officer Byrd instructed inmate Wallace to do so several times, and then Officer Byrd struck Plaintiff on the arm (Doc. 19-2, pp. 1-2). Next, Officer Daughtry stated that as Plaintiff pulled his arm in, Plaintiff tried to grab Officer Byrd (Doc. 19-2, p. 2). Plaintiff specifically denies that he made any threat to throw "shit" or urine, or that he tried to grab Defendant Byrd (Doc. 21, p. 2). After the incident, Officer Byrd reported the incident to Lieutenant Alvin White (Doc. 18-6). Also, Plaintiff was taken to the Holman Health Care Unit for a medical evaluation, which was conducted by the Licensed Practical Nurse Billy Booker on or about February 17, 2010 (Docs. 18-6; 18-8). At the examination, Nurse Booker noted that there were small abrasions across Plaintiff's upper arm, but the skin was unbroken, there were no other cuts, and there were no broken bones or fractures noted (Doc. 18-7; Doc. 18-10, pp. 14-

22, 94). Plaintiff complained of arm pain for a few months after the February 17, 2010 incident, but also did not take the pain medicine prescribed to him by the doctor on multiple occasions (*see* Doc. 18-10, pp. 23, 27-28, 38, 40, 65, 77, 83-84). Also, during the time he complained of arm pain, Plaintiff was able to be handcuffed without complaint of pain (see Doc. 18-10, pp. 51-53).

Subsequent to the February 17, 2010 incident, a disciplinary hearing occurred, and a report was compiled wherein Plaintiff was found in violation of rule number 56 (a failure to obey a direct order of an "ADOC" official) (Doc. 18-5, p. 3). The disciplinary hearing officer, Sergeant Chris Corbitt, found the Plaintiff guilty because Officer Byrd gave Plaintiff several direct orders to move his arm inside the cell so Officer Byrd could close the tray door, and the hearing officer did "not believe inmate Wallace when inmate Wallace stated under oath that Officer Byrd did not give inmate Wallace any orders before striking inmate Wallace with a baton." (Doc. 18-5, p. 3). Additionally, an incident report was completed (Doc. 18-9).

Plaintiff claims that Officer Byrd used unnecessary force upon Plaintiff (Doc. 5). Plaintiff requests an award of "compensatory damages in the amount of $100,000.00 for injury to

my arm [and] punitive damages in the amount of $75,000.00." (Doc. 5, p. 7).

On February 9, 2011 Defendant Officer Byrd filed an Answer and Special Report denying Plaintiff's claims and asserting the affirmative defenses of qualified and absolute immunity[4] (Doc. 17). On February 10, 2011, Defendant filed signed and notarized affidavits of affidavits previously unsigned and attached to the Special Report (Docs. 19-1, 19-2).

On February 28, 2011 the Court ordered that Defendant's Special Report and Answer be treated as a motion for summary judgment (Doc. 20). Plaintiff filed his response on March 11, 2011 (Doc. 21). Plaintiff's pleadings and Defendant's motion are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party

---

[4] Defendants set forth various immunities as affirmative defenses. However, since the Court finds herein that Plaintiff's allegation of excessive force do not establish a constitutional violation, there is no need to make further inquiry as to immunity.

who moves for summary judgment. It is well-established that summary judgment is proper-consistent with Federal Rule of Civil Procedure 56(c)-"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence

7

is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

## III. DISCUSSION

As set forth above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of an altercation that occurred on February 17, 2010, while Plaintiff was incarcerated in the segregation unit at Holman Correctional Facility. Section 1983 provides in pertinent part:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes to
> be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress. . . .

42 U.S.C. § 1983 (1994). For the reasons set forth below, the Court finds that Plaintiff's allegations fail to establish any constitutional violation by Defendant. Therefore, it is recommended that Defendant's motion for summary judgment be granted.

As discussed above, in his Complaint Plaintiff claims that Officer Byrd used unnecessary force by striking Plaintiff twice with Defendant's baton, and the Court construes this to mean that the Plaintiff claims an Eighth Amendment violation (Doc. 5, p. 4).

The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that

they acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-8 (1992). In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are as follows: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

> When the "ever-present potential for violent confrontation and conflagration," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132, 97 S.Ct. 2532, 2541, 53 L.Ed.2d 629 (1977), ripens into actual unrest and conflict, the admonition that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators," *Rhodes v. Chapman, supra*, 452 U.S., at 349, n. 14, 101 S.Ct., at 2400, n. 14, carries special weight. "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their *322 judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S., at 547, 99 S.Ct., at 1878.

*Whitley*, 475 U.S. 312, 321.

The question for the Court, then, is whether, under the circumstances of this case, a jury could reasonably conclude that Plaintiff's rights under the Eighth Amendment were violated during the altercation on February 17, 2010. The Court answers that question in the negative.

10

While it is disputed as to whether Plaintiff threatened to throw anything at Defendant or grabbed at Defendant (*see* Doc. 21), the following is undisputed by Plaintiff, given his silence in his response to Defendant's evidence: (1) Plaintiff left his arm in the cell door tray hole after being asked multiple times to remove it (Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2; Doc. 19-1, pp. 1-2; Doc. 19-2, pp. 1-2), (2) Defendant Byrd warned Plaintiff to move his hand by tapping near the tray door opening before actually striking Plaintiff (Doc. 18-4, p. 2), (3) Plaintiff responded with verbal profanity to Defendant Byrd's requests to remove Plaintiff's arm from the tray door opening (Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2), and (4) Plaintiff made his breakfast tray inadequate by tossing a biscuit off of it, and proceeded to complain to officers and asked to complain to a Lieutenant about the inadequate tray (Doc. 18-4, p. 1; Doc. 5, p. 4). Additionally, the record shows that a prison administrator, Correctional Sergeant Chris Corbitt, found at the disciplinary hearing that Plaintiff was given an order to remove his arm, which was not followed in violation of rule 56, and resulted in Defendant Byrd striking Plaintiff (*see* Doc. 18-5, p. 3).

To determine whether there was an Eighth Amendment violation, the Court will evaluate the following: the need for the application of force, the relationship between that need and

the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. *See Hudson*, 503 U.S. at 7.

First, the Court turns to whether there was a need for the application of force. In this instance, Officer Byrd applied force since Plaintiff refused to follow a reasonable request to maintain prison order. Additionally, Plaintiff used profanity in response to Defendant's order, which escalated the situation to one of hostility (*see* Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2).

Second, the Court looks at the relationship between the need and the amount of force used. The amount of force used was one or two baton strikes to Plaintiff's right arm. Defendant used force to make the resistant Plaintiff comply with an order given several times. The order was given, seemingly, to keep the prison routine in place and to maintain control over the disorderly Plaintiff who created a problem and escalated the situation with his use of profanity (*see* Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2).

Third, the Court looks at the threat reasonably perceived. The Court finds that the Plaintiff was reasonably perceived as a threat by Defendant Byrd in that Plaintiff's behavior disrupted the prison order and was a purposeful attempt to be unruly. Plaintiff's resistant behavior and verbal profanity demonstrate that Plaintiff may have intended to escalate the situation to a

12

hostile one (*see* Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2). Also, as undisputed by the Plaintiff, Plaintiff himself caused the problem with the breakfast tray in the first place since he threw his biscuit off his tray (*see* Doc. 18-4, p. 2).

Fourth, efforts were made by Defendant Byrd to temper the severity of the forceful response. Defendant Byrd requested several times for Plaintiff to remove his arm from the tray hole (*see* Doc. 18-4, p. 2; Doc. 18-1, pp. 1-2; Doc. 19-1, pp. 1-2; Doc. 19-2, pp. 1-2). Also, Defendant Byrd hit the tray hole door as an attempt to make Plaintiff move his arm from the hole, and as a physical signal to warn Plaintiff (*see* Doc. 18-4, p. 2). Moreover, Defendant Byrd struck Plaintiff with a baton rather than closing the tray door with Plaintiff's arm in the door, which arguably may have been more physically harmful to Plaintiff and a more aggressive measure.

Fifth, the extent of injury suffered by Plaintiff was a few abrasions to his arm, but the skin was unbroken and there were no bone fractures (*see* Doc. 18-7; Doc. 18-10, pp. 14-22, 94). Plaintiff complained of subsequent arm pain, but this pain did not resolve shortly thereafter which may be attributable to the fact that he did not take his medicine as directed by the doctor (*see* Doc. 18-10, pp. 23, 27-28, 38, 40, 65, 77, 83-84).

The Court cannot and does not condone physical force used against prisoners if designed for the purpose of causing

"unnecessary and wanton infliction of pain." *Ort*, 813 F.2d at 321. At the same time, the Court is keenly aware that prison officials must maintain order and discipline "in an often dangerous and unruly environment." *Ort*, 813 F.2d at 321-22. Prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution. *Id.* "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 323. In this instance, the Court finds that Defendant did not strike Plaintiff with the baton to wantonly inflict unnecessary pain, but merely to maintain order in the prison and over the unruly Plaintiff who purposefully created a hostile situation.

Bearing in mind all of the factors enumerated above, the Court finds that the force used by the Defendant Byrd against Plaintiff was not excessive. Therefore, Plaintiff's Eighth Amendment claim fails as a matter of law.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Defendant Robert Byrd is entitled to summary judgment in his favor on all claims asserted against him by Plaintiff. Accordingly, it is

14

recommended that Defendant's motion for summary judgment be granted and that the entirety of Plaintiff's Complaint against Defendants be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 19th day of August, 2011.

s/BERT W. MILLING, JR.<br>UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[5] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" *Fed. R. Civ. P.* 72(b)(2).

16

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.